*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

RICHARD EDWARD KLUNGLE,

    Defendant-Appellant.

FOR PUBLICATION
November 19, 2024
3:31 PM

Nos. 364125; 367795
Emmet Circuit Court
LC No. 2022-005421-FH

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

CAMERON, P.J.

Defendant appeals his jury trial convictions of two counts of resisting or obstructing an officer, MCL 750.81d(1), and one count of trespass, MCL 750.552. Defendant was sentenced to concurrent sentences of 24 months' to 15 years' imprisonment for each resisting and obstructing charge, and 90 days' imprisonment for the trespass charge. On appeal, defendant argues his Sixth Amendment right to counsel was violated when his trial counsel conceded his guilt as to the trespassing charge during closing argument, and that his final sentences are unreasonable and disproportionate. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of defendant's eviction from a home in Alanson, Michigan. Before his eviction, defendant resided at his grandmother's home for about five years. After defendant's grandmother died, defendant continued to reside in the home. Defendant incorrectly believed that he would inherit the property after his grandmother died. But, defendant's grandmother died intestate, so the home was determined to pass to her children, not defendant. Because defendant refused to leave the home, his uncle initiated eviction proceedings against him, which resulted in an order that he vacate the premises.

Defendant failed to obey the order, and the Emmet County Sheriff's Department posted the final eviction notice on the door to the home. In response to defendant's refusal to leave the home, three Emmet County police officers eventually came to evict him. Police body camera footage shows defendant resisting the officers, culminating in his arrest. The officers ultimately had to drag defendant out of the home. Once outside, defendant began walking on his own, and

was placed in a police cruiser. Before booking, defendant told one of the officers he needed to be "shot in the f***ing face," and a few moments later, he exclaimed: "Right in your f***ing face!"

Defendant's appointed counsel in this case had previously represented him in several other cases, including the eviction case. Defendant's relationship with his counsel deteriorated over time, which defendant attributed to an undesirable result in one of the other cases the attorney was handling. By the time of trial, defendant and his counsel "were virtually not speaking at all," despite counsel's best efforts.

Defendant testified at trial. He admitted that he remained in the home after receiving the eviction notice, but did not believe he was trespassing because the house was supposed to be his. Relevant to this appeal, defense counsel conceded defendant's guilt as to the trespassing charge, stating, during closing argument:

> So, you know, based on what happened in the eviction proceeding, I'm not going to sit here and try to tell you this is not a trespass. The time ran out; but the fact of the matter is the time ran out due really to no fault of his own. He hadn't been able to get out by the 21st; hadn't been able to get out by the 24th.
>
> He is confronted with this, and so, you know, the proofs would show that a trespass was committed. I'm not going to try and tell you something that I don't think the evidence supports. I think the evidence does support that.

Counsel instead argued to the jury that defendant was not guilty of the harsher resisting and obstructing charges. Defendant was convicted as charged.

The trial court later held an evidentiary hearing after defendant argued that he was deprived of his right to counsel and his right to maintain his innocence when counsel conceded his guilt on the trespass charge. Defendant asserted that this concession was against his will because he "denied he was trespassing and testified that he believed he had a right to be on the property[.]" The trial court held an evidentiary hearing at which trial counsel testified about his deteriorating relationship with defendant and his trial strategy in conceding the trespass charge. He explained that while defendant had maintained his innocence, defendant never affirmatively instructed counsel not to concede guilt to the trespass charge. Defendant's testimony at the hearing was generally consistent with trial counsel's representation that he never unequivocally instructed counsel not to concede guilt. The trial court concluded that defendant's Sixth Amendment rights were not violated by the concession because defendant failed to meaningfully participate in his own defense. Defendant now appeals.

## II. SIXTH AMENDMENT

Defendant first argues that his Sixth Amendment right was violated when defense counsel conceded his guilt as to the trespassing charge during closing argument. We disagree.

## A. STANDARD OF REVIEW

This Court reviews questions of constitutional law de novo. *People v Swilley*, 504 Mich 350, 370; 934 NW2d 771 (2019). A trial court's factual determinations are reviewed for clear

error. *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019). "Violation of a defendant's Sixth Amendment-secured autonomy has been ranked 'structural' error; when present, such an error is not subject to harmless-error review." *McCoy v Louisiana*, 584 US 414, 415; 138 S Ct 1500; 200 L Ed 2d 821 (2018). If structural error occurred, "automatic reversal is required." *Swilley*, 504 Mich at 370 (quotation marks and citations omitted).

## B. LAW AND ANALYSIS

"The Sixth Amendment guarantees to each criminal defendant 'the Assistance of Counsel for his defence.' " *McCoy*, 584 US at 421; US Const, Am VI. "For the Sixth Amendment, in 'grant[ing] to the accused personally the right to make his defense,' 'speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant.' " *McCoy*, 584 US at 421 (citations omitted). "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *Id*. at 422 (quotation marks and citation omitted). "Some decisions, however, are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id*.

> Autonomy to decide that the objective of the defense is to assert innocence belongs in this latter category. Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*. [*Id*.]

But, this reasoning is only applicable "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts[;]" it is in this situation that "his lawyer must abide by that objective and may not override it by conceding guilt." *Id*. at 423. *McCoy* distinguished itself from its predecessor, *Florida v Nixon*, 543 US 175; 125 S Ct 551; 160 L Ed 2d 565 (2004), because:

> Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon never asserted any such objective. Nixon "was generally unresponsive" during discussions of trial strategy, and "never verbally approved or protested" counsel's proposed approach. Nixon complained about the admission of his guilt only after trial. McCoy, in contrast, opposed [McCoy's counsel's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court. If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way. [*McCoy*, 584 US at 424 (citations and parenthetical omitted).]

The facts of defendant's case are far more similar to *Nixon* than *McCoy*. Here, defendant never expressly told counsel that he did not want to concede guilt. Indeed, trial counsel testified

that defendant was virtually "nonresponsive" by the time of trial. The trial court found this testimony credible, reasoning that, while counsel "was aware of [defendant's] position[,]" defendant "did not assist [his counsel] at all in trial[,]" and "would not discuss trial tactics with him." Defendant's refusal to communicate with trial counsel forced counsel to defend defendant in a manner that he believed was in defendant's best interests. See *McCoy*, 584 US at 424 ("If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest."). Trial counsel testified in detail about his trial strategy, in which he sought to preserve his credibility with the jury in exchange for conceding the trespassing charge. In light of the evidence, trial counsel conceded the trespassing charge in an attempt to prevail against the more severe resisting or obstructing charges. Because defendant did not express a contrary instruction, trial counsel properly exercised his discretion in implementing what he reasonably believed was the most prudent trial strategy.

Defendant argues *McCoy* extends to situations in which defendants make even a generalized expression of innocence. Defendant's interpretation of *McCoy*'s holding is flawed for several reasons. First, unlike this case, where defendant and trial counsel "were virtually not speaking at all," the defendant in *McCoy* was deeply involved in his trial strategy and repeatedly objected to trial counsel's decision to override his expressed objective. *McCoy*, 584 US at 418-420. Second, defendant's generalized claim of innocence in this case is very different from those made by the defendant in *McCoy*. In *McCoy*, the defendant testified in his own defense, maintained his innocence, and presented an alibi defense. *Id*. at 420. Thus, the defendant in *McCoy* asserted his innocence by challenging the factual basis for the charged offense, contesting the facts, and asserting he did not commit the crimes. In contrast, defendant's own testimony did not challenge the factual basis for the trespassing charge. Rather, defendant acknowledged that he, despite the eviction order, and despite receiving the eviction notice, knowingly remained on the property. Defendant made a generalized claim of ownership of the home, but provided no factual support for this claim other than his testimony that his grandmother intended for him to inherit the property and that he owned a separate property with his grandmother. Therefore, trial counsel's concession was not contrary to defendant's assertion of innocence because defendant limited communication with counsel and did not "vociferously insist[] that he *did not engage in the charged acts*[.]" *McCoy*, 584 US at 417 (emphasis added).[1]

Accordingly, trial counsel's concession of guilt as to the trespassing charge did not violate defendant's Sixth Amendment right to counsel.

## III.  SENTENCE PROPORTIONALITY

Defendant next argues his sentences are unreasonable and disproportionate. We disagree.

---

[1] Although not determinative of the issue, we note that defendant did not complain about trial counsel's concession of guilt at trial or when he addressed the court during allocution at sentencing. This is in stark contrast to the defendant in *McCoy* who repeatedly objected to any admission of guilt at trial. *McCoy*, 584 US at 419-420.

## A.  STANDARD OF REVIEW

"[O]n appeal, challenges to within-guidelines sentences are reviewed for reasonableness according to the test outlined in *Steanhouse*."[2]  *People v Posey*, 512 Mich 317, 326; 1 NW3d 101 (2023) (opinion by BOLDEN, J.).  This Court reviews a trial court's factual determinations for clear error.  *Chaney*, 327 Mich App at 587 n 1.

## B.  LAW AND ANALYSIS

When a defendant's minimum sentence is within the guidelines range, this Court applies "a nonbinding rebuttable presumption of proportionality."  *Posey*, 512 Mich at 360 (opinion by BOLDEN, J.).  Thus, because defendant's sentences were within his calculated guidelines range, defendant bears the burden of demonstrating the sentences are unreasonable and disproportionate.  See, e.g., *People v Davis*, 509 Mich 52, 76; 983 NW2d 325 (2022) (a rebuttable presumption shifts the burden of proof to the party alleging error).

Defendant argues his sentence was unreasonable because: (1) his resistance was "minimal" during the arrest; (2) his actions were exacerbated by the emotionally-charged nature of the situation; (3) his statement to the officer about being shot in the face was not a threat, merely an outburst; (4) the term the Michigan Department of Corrections (MDOC) recommended in the presentence report was only 12 months' incarceration in jail; (5) defendant was well-behaved while incarcerated; (6) defendant's prior felony convictions occurred a long time ago and did not suggest he was a "violent offender;" and (7) the punishment goal of sentencing would still be satisfied with the lesser, 12-month sentence.  But, the trial court's lengthy on-the-record reasoning for the sentence it imposed either directly or indirectly addressed, and dispensed with, nearly all these claims, and there is no indication any of those determinations were clearly erroneous.  Further, the claims that the trial court did not expressly reject lack merit.

First, the trial court opined that, given defendant's "size and . . . anger on that day [it was] amazing . . . the officers were not injured."  The body camera footage clearly demonstrates that defendant resisted enough so that two officers had to use force to remove him from the home.  Whether his resistance was enough to threaten the officers' safety may be debatable, but this disputed point does not rise to the level of clear error required to overrule the trial court's finding.  Further, even if defendant's resistance was "minimal," the fact remains that he resisted lawful orders.  Defendant's modest resistance does not rebut the presumption of proportionality given to defendant's within-guidelines sentence.

Second, while it is true the situation was emotionally charged, the trial court found this did not justify defendant's actions, noting that, when the "officers . . . showed up he could have just as easily said I don't agree with this, we'll try to resolve it, and do so in a peaceful manner.  He didn't do that."  Indeed, the trial court considered defendant's lack of remorse for his actions, and was not persuaded by defendant's explanation for his behavior.  There is no indication this reasoning is clearly erroneous.  Defendant admitted he received the eviction notice, and had three days to sort his emotions before the officers came to evict him.  Furthermore, while defendant was

---

[2] *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017).

clearly upset in the footage, he did not appear so distraught as to provide a reasonable explanation for his resistance.

Third, while defendant disagrees, the trial court found his aggressive statements to police to be a threat. The trial court considered that the officer took the statements to be serious threats given defendant's "criminal history of assaultive behavior against police and his family as well as his criminal record for possessing a loaded firearm in his vehicle." We discern no clear error from the trial court's reasoning.

Fourth, defendant's reliance on the MDOC's sentencing recommendation expressed in the presentence investigation report is misplaced. The MDOC is a state department responsible for supervising convicted adult felons. Its focus and obligations differ from a sentencing court's obligation to independently fashion a sentence that is proportionate to both offense and offender. Likewise, a reviewing court's assessment of proportionality concerns whether the sentence imposed by the trial court is reasonable given the specific circumstances of a case and offender. *Dixon-Bey*, 321 Mich App at 520-521. The MDOC's sentence recommendation is not a proper consideration for this Court.

As for defendant's remaining arguments on appeal, the record demonstrates the trial court did, in fact, consider defendant's good behavior while incarcerated, but nonetheless deemed it to be of minimal importance when weighed against his behavior on the day he was arrested as well as his behavior in court. The record also reflects that, while the trial court did consider defendant's prior crimes, this consideration had little bearing on its sentences for *this* offense. The trial court's brief reference to defendant's criminal history pales in comparison to its lengthy discussion about defendant's conduct and behavior for the convictions at issue. Additionally, regardless of whether defendant's criminal history paints him as a "violent offender," the record in this case certainly does. Defendant had a recent conviction for domestic violence against his daughter, and told a police officer that he needed to be shot in the face, twice. Finally, while the goal of punishment could arguably be satisfied by a shorter period of incarceration, this does not render the trial court's sentences unreasonable. The trial court was not required to sentence defendant to the lowest conceivable term that may satisfy the punishment goal for sentencing, particularly in light of all the other considerable factors in this case.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

-6-